In the Matter of SARAH ROBINSON, Petitioner, against JOSEPH D. McGOLDRICK, as Temporary State Housing Rent Administrator, Respondent.

In the Matter of MELANIE MARKENS, Petitioner, against JOSEPH D. McGOLDRICK, as Temporary State Housing Rent Administrator, Respondent.

Supreme Court, Special Term, New York County, May 23, 1952.

*Roth & Roth* for Melanie Markins, petitioner.

*Robert H. Schaffer* for respondent.

STEUER, J. This application seeks a review of a ruling by the Rent Administrator of the Temporary State Housing Rent Commission, which denied a protest by the petitioner and others. The proceeding before the commissioner was one where separate protests by each of the tenants of the controlled units of the Hotel Monterey were consolidated. The original protests contained many grounds of objection. As to one, the respondent has remanded the protests to the local administrator for further findings. With one exception, other objections are not pressed. As to the objection pressed, all parties regard the ruling of respondent as final in the matter and that this application will dispose of the validity of the protest on the sole ground of objection herein discussed.

The owner of the premises made application to the respondent for rent increases in the controlled units of the premises pursuant to subdivision 7 of section 33 of the State Rent and Eviction Regulations. This regulation provides that a landlord may apply for increase in the maximum rent otherwise allowable where:

" a. The landlord operates a hotel * * * and has incurred unavoidable increases in property taxes and other costs * * * which have occurred since the Federal date determining the maximum rent * * *.

" b. If, as determined by the Administrator, the landlord has not been fully compensated by increases in the rental income for the controlled housing accommodations sufficient to offset such increases in operating costs as are charged to such controlled housing accommodations the Administrator shall grant an adjustment in the maximum rents in the manner and subject to the provisions of subdivision c of this paragraph.

"c. That portion of the increased operating costs applicable to the controlled housing accommodations shall be apportioned equitably among all the controlled housing accommodations in the property. In making such apportionment and in fixing the increases in maximum rent the Administrator shall give due consideration to all previous adjustments or increases * * * provided, however, that no adjustment * * * shall exceed 15 percent ".

Pursuant to these regulations, the administrator found the increased operating costs since 1943 to be $109,969.82. By a formula which is not objected to, he found that the controlled units constituted 53.97% of the entire structure. He applied this percentage and arrived at the figure of $59,350.71 as the amount of increased expense applicable to the controlled units.

He then determined the increase in rentals from the controlled space as compared with 1943. This amounted to $34,571.16. Subtracting this figure from the proportion of expense increase attributable to the controlled area, he arrived at a difference of $24,779.55. As this last figure exceeded 15% of the rental income being derived from controlled units he allowed an increase of 15%.

The petitioning tenants' objection is that this method of determination does not accord with the regulation. The argument is that the regulation can only implement the statute and must be given an interpretation which conforms to the statute. If it cannot be so construed, the regulation must fail and the test would be whether the increase is sanctioned by the statute. This contention is correct. The State Residential Rent Law (L. 1946, ch. 274, as amd. by L. 1951, ch. 443, § 2) gives the force of law to the regulations but only to the extent that they are consistent with the act itself.

The statute itself provides (§ 4, subd. 4, par. [a], cl. [3]) when a hotel operator may apply for an increase in rents and the regulation follows this language in paragraph (a) of subdivision 7 above quoted. Paragraph (b) of subdivision 4 of the section limits the increase to be granted to 15%. Paragraph (c) reads "Any increase in maximum rent shall be apportioned equitably among all the controlled housing accommodations in the property. In making such apportionment and in fixing increases in maximum rents the commission shall give due consideration (1) to all previous adjustments or increases in maximum rents * * *; and (2) to all other income derived from the property, including income from space and accommodations not controlled * * * so that there is allocated to the controlled housing accommodations therein only that portion of the amount of increase necessary pursuant to (1), (2) or (3) of paragraph (a) of subdivision four hereof as is properly attributable to such controlled accommodations."

The tenants claim that the calculation should include as a factor any increase in income from the decontrolled portions of the premises with the result that if the entire increase in income exceeds the increase in expenditure there can be no increase in the maximum rent. Even if the increase in total income does not equal the increase in expenditure, it is claimed, that only the amount by which it exceeds it should be the basis of calculation. The respondents' answer to this claim is simple. It is that the statute applies to controlled premises only so that every reference in it is to controlled premises. This might

be true if there was doubt as to what portion of the premises was intended, but where the statute says "including income from space not controlled" there is no doubt, and an argument to the contrary is captious.

It is contended, not by, but on behalf of defendant, that the statute was complied with even to the extent of including income from decontrolled space. This conclusion is reached because in arriving at the increased costs the respondent deducted from the expense figures all income other than rental income. While this is a partial compliance, it does not go to the extent of the statutory mandate.

On behalf of the landlord it is urged that the statutory direction to give consideration to the income from decontrolled space is not a direction to include that income in his calculation but merely to reflect upon it. It would follow that after reflecting upon it he would give it effect or not as he saw fit. It is further urged that this being the interpretation given by the administrator, the courts must accept that interpretation. In a very limited sense it is true that where an administrative body is designated to administer a statute, the interpretation of the broad terms must be accepted if the conclusions have a rational basis (*Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104). That is not the situation here. No broad term of the statute is involved. Nor has the interpretation rational basis. It is absurd to believe that the Legislature would direct the administrator to think about a subject and then do what he chose. Nor is it conceivable that the Legislature would give the administrator the right to give effect to the income in question in one instance and not in another, which is the inevitable consequence of the interpretation contended for.

Lastly it is argued that the net effect of the petitioner's position will be that if the increase in income from decontrolled space is considered (that is deducted from the excess of current expenses over those of the freeze date) it will mean that the occupants of the uncontrolled space are contributing more than their share toward the rental income and consequently the tenants of the controlled space are paying less. This is stated to be so obviously unfair that it could not have been the legislative intent. What is fair depends, of course, on the angle from which the problem is regarded. The sections of the State Residential Rent Law under consideration are manifestly designed to relieve against an injustice, discovered to result from the general freezing of rents. Costs, not being frozen, mounted and hardship to the property owner frequently resulted. The

legislative object became to relieve against this hardship without destroying the original purpose in freezing rents. With this end in view, in the particular classes of accommodations provided for in the section, it was enacted that compensation for the increased costs could be had by increasing rents but only to the extent that the increased costs represented a hardship. If the increased costs were met by an increase in income from any source whatsoever, there was no actual hardship and it was unnecessary to lessen the protection originally given the occupants of controlled space. Looked at from this angle the claimed inequity becomes invisible.

This explanation is excusable only to show that it is not impossible to accept the words of the statute as an expression of their meaning. Actually neither the administrator nor the court is concerned with whether a statute produces an equitable result. The duty of the one is to determine what the statute means, the other to carry it out.

The motion is granted to the extent of remanding the determination of respondent for a further calculation in accord with this opinion.